NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TODD D. PICKENS, | ) | No. C 04-02621 JF (PR) |
| | ) | |
| Plaintiff, | ) ) | ORDER GRANTING ALLEN'S MOTION FOR SUMMARY JUDGMENT; DENYING ALLEN'S MOTIONS TO DISMISS; GRANTING DUNCAN'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY AND FOR DEFAULT; GRANTING PLAINTIFF'S MOTION TO COMPEL SERVICE; DIRECTING MARSHAL TO EXPEDITE SERVICE OF DEFENDANTS REDDER AND BAUGH; DIRECTING PLAINTIFF TO SERVE OR PROVIDE LOCATION OF DEFENDANTS JACOBS AND KIRKLAND |
| vs. | ) | |
| R. JACOBS, et al., | ) | |
| Defendants. | ) | |
| | ) | (Docket Nos. 53, 55, 64, 65, 71, 72, 73) |

Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983. After finding that the second amended complaint, when liberally construed, stated cognizable claims for relief, the Court ordered it served upon seven named Defendants, whom Plaintiff identified as officials of Pelican Bay State Prison ("PBSP"), where Plaintiff formerly was housed. Defendant Duncan has filed a motion to dismiss the claims against him, Plaintiff has filed an opposition, and Duncan has filed a reply. Defendant Allen has filed two motions to dismiss and a motion for

summary judgment, Plaintiff has filed a consolidated opposition to these motions, and Allen has filed a consolidated reply. The status of the remaining Defendants, four of whom have not been served, is addressed below.[1]

## BACKGROUND

Plaintiff alleges in his complaint[2] that Defendant Correctional Officer R. Jacobs assaulted him in April 2003 in the presence of other prison officials. He further alleges that he suffered neck and shoulder injuries in this incident, and that Defendants Duncan and Allen provided insufficient medical care over his injury. Plaintiff also alleges that Defendant Northrop retaliated against him for filing grievances against other PBSP officials.

In its Order of Service, dated January 22, 2008, the Court found that, when liberally construed, the complaint stated the following cognizable claims for relief that: (1) Defendants Jacobs, Redder, Baugh and Kirkland violated Plaintiff's Eighth Amendment right in using excessive force against Plaintiff and failed to protect Plaintiff from the use of excessive force; (2) Defendants Jacobs, Redder, Baugh and Kirkland violated Plaintiff's Eighth Amendment right to personal safety and to be free from cruel and unusual punishment; (3) Defendant Northrop violated Plaintiff's First Amendment right to redress his grievances by retaliating against Plaintiff for his complaints against other correctional officers; and (4) Defendants Allen and Duncan violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's serious medical needs. The complaint also included state law claims against the Defendants.

---

[1] Defendant Correctional Officer Northrop was served and has appeared by his attorney, the California Attorney General, who indicates in Defendant Duncan's motion to dismiss that Northrop waives the opportunity to file a responsive pleading. A schedule for Northrop, and any other served Defendants, to file a dispositive motion will be set following resolution of the status of the unserved Defendants, as ordered below.

[2] For convenience, the Court refers to the second amended complaint simply as "the complaint" in this order.

# DISCUSSION

## A. Defendant Duncan's Motion to Dismiss

Duncan has filed an unenumerated Rule 12(b) motion to dismiss Plaintiff's Eighth Amendment claims against him on the grounds that Plaintiff has not exhausted his administrative remedies with respect to such claims. Exhaustion is an affirmative defense as to which Defendants have the burden of proof; it should be raised in an unenumerated Rule 12(b) motion to dismiss rather than in a motion for summary judgment. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[3] If the Court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. Id. at 1120.

### 1. Allegations Regarding Duncan

Plaintiff makes the following allegations regarding Duncan, a PBSP physician. On September 29, 2004, Duncan examined Plaintiff in response to complaints of pain in the neck and shoulder. Duncan attributed such pain to a 1989 car accident, and gave Plaintiff a shot of cortisone. Plaintiff later underwent an MRI, which, according to Plaintiff, indicated that the injuries were not related to the car accident. The pain in Plaintiff's right shoulder increased several days after the cortisone shot, and Plaintiff also began feeling pain in his ankles and right wrist for the first time. Plaintiff saw Duncan a second time, and Plaintiff refused Duncan's offer to give him a second cortisone shot. Plaintiff told Duncan that his pain was caused by the prior cortisone shot, and that Duncan responded that such was not the case.

### 2. Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321

---

[3] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust -- a procedure closely analogous to summary judgment -- the court must give the prisoner fair notice of his opportunity to develop a record. Wyatt, 315 F.3d at 1120 n.14. Plaintiff was given such notice in the order of service.

1  (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be
2  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal
3  law, by a prisoner confined in any jail, prison, or other correctional facility until such
4  administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The
5  exhaustion requirement applies equally to prisoners held in private or government
6  facilities.  See Roles v. Maddox, 439 F.3d 1016, 1017-18 (9th Cir. 2006).  Exhaustion is
7  mandatory and no longer is left to the discretion of the district court.  Woodford v. Ngo,
8  126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).
9  "Prisoners must now exhaust all 'available' remedies, not just those that meet federal
10 standards."  Id.  Even when the relief sought cannot be granted by the administrative
11 process, *i.e*., monetary damages, a prisoner must still exhaust administrative remedies.  Id.
12 at 2382-83 (citing Booth, 532 U.S. at 734).

13     The State of California provides its prisoners the right to appeal administratively
14 "any departmental decision, action, condition or policy perceived by those individuals as
15 adversely affecting their welfare."  Cal. Code Regs tit. 15, § 3084.1(a).  It also provides
16 them the right to file appeals alleging misconduct by correctional staff.  Id. § 3084.1(e).
17 In order to exhaust available administrative remedies within this system, a prisoner must
18 proceed through several levels of appeal: (1) informal resolution, (2) formal written
19 appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head
20 or designee, and (4) third level appeal to the director of the California Department of
21 Corrections and Rehabilitation.  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal.
22 1997) (citing Cal. Code Regs. tit 15, § 3084.5).  A final decision from the director's level
23 of review satisfies the exhaustion requirement under § 1997e(a).  Id. at 1237-38.

24     Administrative remedies are not exhausted where the grievance, liberally
25 construed, does not have the same subject and same request for relief.  See generally
26 O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (even
27 with liberal construction, grievance requesting a lower bunk due to poor balance resulting
28 from a previous brain injury was not equivalent to, and therefore did not exhaust

1  administrative remedies for, claims of denial of mental health treatment in violation of the
2  ADA and Rehabilitation Act).

3      3      <u>Analysis</u>

4      Defendants have submitted declarations and appeal records from prison officials
5  showing that there is no record of any administrative grievance having been pursued to
6  the highest level of review concerning the cortisone shot given by Duncan.[4]  (Grannis
7  Decl., Ex. E at AGO-035.)  Plaintiff states that he submitted an administrative grievance
8  regarding the cortisone shot from Duncan at the informal level to PBSP's Chief Medical
9  Officer (Opposition, Ex. B), but he concedes that he did not pursue this grievance to any
10 of the higher levels of administrative review.

11     Plaintiff argues that he did not exhaust the claim to the higher levels of
12 administrative review because he never received a response to the grievance at the
13 informal level.  Under the pertinent prison regulations, the lack of response to his
14 informal grievance did not preclude Plaintiff from proceeding to the next level of appeal
15 at the first formal level of review.  California Code of Regulations § 3084.5(a)(1) states
16 that an inmate need only show evidence of "an attempt" to obtain informal review before
17 he may proceed to the first formal level of review.  Plaintiff could have obtained review
18 of his grievance at the first formal level by submitting the copy of the informal grievance
19 that he attaches to his opposition to Duncan's motion because that document
20 demonstrates his "attempt" to obtain informal review.  Thus, although the first formal and
21 higher levels of administrative review were available to Plaintiff, he did not pursue them.

22     Plaintiff argues that exhaustion should be excused on the grounds of his
23 "diligence."  However, Plaintiff provides no authority, and the Court is aware of none,
24 establishing that a showing of diligence excuses the PLRA's exhaustion requirement.
25 The Supreme Court has cautioned that the Court "will not read futility or other exceptions into

---

[4] The parties agree that a May 2003 grievance pursued to the highest level of review did not concern the cortisone shot, and was in fact filed approximately a year before the shot.  (Quinn Decl., Ex. B at AGO-002.)  As such, this grievance did not exhaust the claims against Duncan. <u>O'Guinn</u>, 502 F.3d at 1062-63.

statutory exhaustion requirements." See Booth, 532 U.S. at 741 n.6.  In any event, there is no record evidence that Plaintiff was diligent, or indeed that he made any attempt to pursue his grievance to the first formal level of review or higher as the regulations permitted him to do.  Plaintiff states that he wrote a "'follow-up' appeal and 'written inquiry'" regarding the lack of response to his informal inquiry.  He does not, however, include a copy of this alleged "inquiry," nor does he describe when or to whom it was submitted.  As there is no evidence that Plaintiff ever expended diligent efforts to pursue his grievance to the first formal and higher levels of review, even if there were a diligence exception to the PLRA's exhaustion requirement, there would be no grounds for applying such an exception in this case.

Accordingly, Defendant Duncan's motion to dismiss Plaintiff's Eighth Amendment claims must be granted, and such claims must be dismissed without prejudice.[5]

B.    Defendant Allen

Defendant Allen has filed a motion for summary judgment on the grounds that there are no genuine issues of material fact in support of Plaintiff's claims that Allen was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

1.    Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

---

[5] In light of the dismissal of the federal claims against Dr. Duncan, the Court declines to exercise supplemental jurisdiction over the state law claims against him, and such claims are DISMISSED without prejudice to Plaintiff's raising them in state court.  See 28 U.S.C. § 1367(c).

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

    2.    Evidence Regarding Medical Treatment by Allen[6]

Defendant Allen has submitted a declaration which, along with as Plaintiff's medical records, that describes the following course of events. Following Plaintiff's altercation with Correctional Officer Jacobs on April 26, 2003, he was treated by a variety

---

[6] The following evidence is undisputed except where otherwise noted.

of PBSP medical personnel regarding his complaints of pain and swelling in his right shoulder and neck. Allen, a PBSP physician and surgeon, first examined Plaintiff on June 3, 2003. (Allen Decl. ¶ 16.) Plaintiff told Allen that his right shoulder had been hurting since the altercation with Jacobs. (Id.) Allen discovered from Plaintiff's medical records that Plaintiff had been examined on April 28, 2003, when medical staff prescribed Motrin and advised Plaintiff to alternate between heat and ice. (Id. at ¶ 16 & Ex. A.) Dr. Allen found tenderness at the top of Plaintiff's right shoulder, around the acromioclavicular ("AC") joint. (Id. at ¶ 17.) Plaintiff reported that it was difficult to raise his right arm and that he experienced pain when he did so. (Id.) Plaintiff could grip with his right hand, and had no numbness or tingling in the arm. (Id.) Allen ordered an x-ray to rule out serious injury and a follow-up examination in ten days, and he prescribed acetaminophen for the pain. (Id. at ¶ 18 & Ex. B at 2.) The x-ray revealed no bone, joint or soft tissue damage. (Id. at ¶ 20 & Ex. B.) Allen concluded, in adherence with the standard of care in the medical community, that Plaintiff's shoulder was normal that the pain would resolve itself with relatively little treatment, and that a conservative approach should be taken at that stage. (Id. at ¶ 18, 20.)

Allen next treated Plaintiff's shoulder on December 2, 2004.[7] (Id. at ¶ 24.) Over the intervening seventeen months, Plaintiff had been examined and treated by a variety of doctors for his shoulder pain, as well as for other, unrelated medical conditions. (Id.) Plaintiff had been scheduled by another doctor for an MRI examination, but Plaintiff declined the procedure because he was claustrophobic, and at the time of Allen's examination, a second MRI was on Plaintiff's schedule. (Id.) Allen found that Plaintiff continued to feel pain and tenderness around the AC joint. (Id.) Allen concluded that Plaintiff should go through with the MRI because the earlier x-ray had failed to identify any abnormalities in the shoulder and the shoulder had not been responsive to the prior

---

[7] Dr. Allen examined Plaintiff on July 3, 2003, and January 7, 2004, but these visits concerned Plaintiff's constipation and abdominal pain. These conditions were not related to Plaintiff's earlier complaints of shoulder and neck pain, and Plaintiff did not complain of any neck or shoulder pain during those visits. (Allen Decl. at ¶¶ 22-23.)

medication and treatment.  (Id. at ¶¶ 24-25.)  Allen also referred Plaintiff to an orthopedic surgeon, prescribed acetaminophen, and scheduled Plaintiff for a follow-up appointment in thirty days.  (Id. at ¶ 24.)

The MRI was conducted five days later, on December 7, 2004, and showed a probable small tear of the distal rotator cuff.  (Id. at ¶ 27.)  The cause or timing of this tear could not be discerned, nor could it be discerned whether it had been the result of a single incident or of wear and tear over time.  (Id.)  Allen did not examine Plaintiff again after December 2, 2004.  (Id. at ¶ 32.)  Allen states that he never gave a cortisone shot to Plaintiff or recommended that he receive one.  (Id. at ¶ 29.)

Plaintiff disputes Allen's account in two respects.[8]  First, he states that during his appointment in June 2003, he informed Allen that the Motrin prescribed to him previously was not working.  (Opposition, Ex. A at ¶ 2.)  Second, Plaintiff claims that Allen accused him of "faking," refused to provide alternate medication, discontinued his pain medication, and recommended a cortisone shot.[9]  (Id. at ¶¶ 3-5.)

### 3.   Analysis of Eighth Amendment Claim

Plaintiff claims that Defendants were deliberately indifferent to his medical needs by failing to treat properly his complaints of having blood in his urine.  Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

---

[8] Plaintiff's declaration is not sworn under penalty of perjury.  Nevertheless, in light of Plaintiff's pro se status, the Court assumes for purpose of resolving the instant motion, that the declaration was properly sworn.  For the reasons discussed below, even if the declaration were properly sworn and could be considered as evidence, it would not create a genuine issue of material fact precluding summary judgment.

[9] Although he had alleged in his complaint that Allen gave him a cortisone shot, Plaintiff concedes in his opposition that he did not.  (Opposition at 5.)

1  overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th
2  Cir. 1997) (en banc).
3       A prison official is deliberately indifferent if he knows that a prisoner faces a
4  substantial risk of serious harm and disregards that risk by failing to take reasonable steps
5  to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of
6  criminal recklessness). The prison official must not only "be aware of facts from which
7  the inference could be drawn that a substantial risk of serious harm exists," but "must also
8  draw the inference." Id. Consequently, in order for deliberate indifference to be
9  established, there must exist both a purposeful act or failure to act on the part of the
10 defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060. In order to
11 prevail on a claim of deliberate indifference to medical needs, Plaintiff must establish that
12 the course of treatment the doctors chose was "medically unacceptable under the
13 circumstances" and that they chose this course in "conscious disregard of an excessive
14 risk to plaintiff's health." See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir.
15 2004). A claim of mere negligence related to medical problems, or a difference of
16 opinion between a prisoner patient and a medical doctor, is not enough to make out a
17 violation of the Eighth Amendment. Id.; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th
18 Cir. 1981).
19     Here, the undisputed evidence indicates that when Allen first examined Plaintiff,
20 in June 2003, for his shoulder pain, he reviewed Plaintiff's medical history, examined
21 Plaintiff's shoulder injury, and ordered an x-ray and a follow-up examination in ten days.
22 Plaintiff claims that Allen offered him either a cortisone shot or additional Motrin, and
23 that when Plaintiff refused these, Allen discontinued Plaintiff's pain medication entirely.
24 However, this statement is directly contradicted by Plaintiff's medical records, which
25 demonstrate that Allen prescribed a new pain medication (acetaminophen) following the
26 June 2003 examination. (Allen Decl., Ex. B at 2.) Plaintiff has not provided any
27 documentary or other evidence in support of his assertion to the contrary. In light of the
28 clear prescription for acetaminophen by Allen in Plaintiff's medical records, the Court

concludes Plaintiff's unsupported statement to the contrary does not, without more, create a "genuine" dispute of fact.[10]

The undisputed evidence with respect to the June 2003 examination further indicates that, although Plaintiff complained of pain in his right shoulder and difficulty raising his arm, he experienced no numbness or tingling, he did have the ability to move his arm, he could make a good grip with his hand, and the x-ray revealed no damage to the bone, joint, or ligaments. Based on these circumstances, Allen opined that the standard of care in the medical community required a conservative approach, consistent with Allen's ordering an x-ray, prescribing acetaminophen, and ordering a follow-up examination. Plaintiff's disagreement with this approach, without more, does not create a genuine issue of fact as to whether or not Allen was deliberately indifferent to Plaintiff's medical needs. See Toguchi, 391 F.3d at 1058-60 (difference of opinion between prisoner patient and medical doctor does not establish Eighth Amendment violation).

It is undisputed that at Plaintiff's next appointment with Allen concerning his shoulder, which occurred on December 2, 2004, Allen recommended that Plaintiff undergo his scheduled MRI examination, referred him an orthopedic surgeon, prescribed pain medication, and scheduled a follow-up examination. Allen opined that an MRI and referral to a surgeon were required because an x-ray had revealed no abnormalities and Plaintiff's pain symptoms had persisted. Plaintiff does not assert, and has submitted no evidence indicating, that either this opinion or the treatment Allen provided were medically inappropriate under the circumstances.

In sum, the evidence demonstrates that this was not a case in which Allen delayed or ignored the treatment Plaintiff needed for his shoulder pain. To the contrary, the undisputed evidence indicates that Allen, on both of the occasions that he examined

---

[10] Plaintiff also argues that a cortisone shot is not a proper treatment for his condition. Plaintiff provides no evidence that such a shot was medically inappropriate, and, in any event, it is undisputed that Duncan, not Allen, administered the shot to Plaintiff over a year after Plaintiff's visit with Allen. As explained above, Plaintiff's claims against Duncan were not exhausted.

1  Paintiff, provided a substantial amount of treatment for Plaintiff's condition, including an
2  x-ray, an MRI, pain medication, follow-up appointments, and a referral to a orthopedic
3  specialist.  Plaintiff has submitted no evidence that this treatment was medically
4  inappropriate under the circumstances or that tends to undermine Allen's medical opinion
5  that the standard of care in the medical community was met.  Because has not created a
6  genuine issue of material fact in support of his claim that Allen was deliberately
7  indifferent to his serious medical needs in violation of the Eighth Amendment,[11] Allen is
8  entitled to summary judgment on Plaintiff's claims.[12]

C.     Unserved Defendants

As indicated above, the following four Defendants have not yet been served: Correctional Officer R. Jacobs, Correctional Officer Redder, Correction Officer Baugh, and Warden Richard Kirkland.  In its January 22, 2008 order of service, the Court directed the United States Marshal to serve all of the Defendants at PBSP, where Plaintiff indicated they were located.  On February 13, 2008, the Clerk issued summonses for the Defendants.  On March 28, 2008, the Marshal returned unexecuted the summonses for Defentants Jacobs and Kirkland. noting that these Defendants no longer are located at PBSP.  The Marshal has not returned the summonses or otherwise indicated to the Court whether Defendants Baugh and Redder have been served.

In cases in which a plaintiff proceeds in forma pauperis, the "officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d).  The Court must appoint the Marshal to effect service, see Fed. R. Civ. P. 4(c)(2), and the Marshal, upon order of the Court, must serve the summons and the complaint, see Walker v. Sumner, 14 F.3d 1415,

---

[11] Similarly, as Plaintiff has not identified a genuine issue of fact as to whether the standard of care in the medical community was met, Allen also is entitled to summary judgment on Plaintiff's state law negligence claims.  See Bardasseno v. Michaels, 3 Cal.3d 780, 788 (1970) (negligence claim against medical doctor requires showing that doctor failed to exercise skill, knowledge and care ordinarily possessed and exercised by members of medical profession under similar circumstances).

[12] In light of this conclusion, the Court need not address Allen's motions to dismiss, which will be denied as moot.

1422 (9th Cir. 1994). Although a Plaintiff who is incarcerated and proceeding in forma pauperis may rely upon service by the Marshal, such Plaintiff "may not remain silent and do nothing to effectuate such service"; rather, "[a]t a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent defects of which [he] has knowledge." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987).

Here, Plaintiff's second amended complaint has been pending for well over 120 days, and thus, absent a showing of "good cause," is subject to dismissal without prejudice as to the unserved Defendants. See Fed. R. Civ. P. 4(m). Plaintiff has not provided sufficient information to allow the Marshal to locate and serve Defendants Kirkland and Jacobs, and consequently Plaintiff must remedy that situation or face dismissal of his claims against these two Defendants without prejudice. See Walker v. Sumner, 14 F.3d at 1421-22 (holding prisoner failed to show cause why prison official should not be dismissed under Rule 4(m) where prisoner failed to show he had provided Marshal with sufficient information to effectuate service). Accordingly, the claims against Defendant Kirkland and Jacobs will be dismissed without prejudice under Rule 4(m) unless Plaintiff either himself effects service upon them or provides the Court with an accurate current location such that the Marshal is able to effect service upon them. Moreover, as these Defendants have not been served, Plaintiff's motion for default judgment against them is DENIED.

Over seven months have passed since the summonses were issued for the Marshal to serve Defendants Redder and Baugh, and no response from the Marshal has been received. The Marshal will be ordered to serve these Defendants in an expedited manner, as provided below, and, if necessary, to effectuate such service in person. Following resolution of the service issues, the Court will schedule the filing of dispositive motions by whichever Defendants remain in this action.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendant Duncan's motion to dismiss for failure to exhaust administrative

remedies, under Rule 12(b) of the Federal Rules of Civil Procedure (Docket No. 55), is GRANTED. The claims against Duncan are DISMISSED without prejudice to Plaintiff raising them in a newly-filed action after all available administrative remedies have been properly exhausted.

2. Defendant Allen's motion for summary judgment (Doc. No. 64) is GRANTED. Allen's motions to dismiss (Docket Nos. 53 and 65) are DENIED as moot.

3. Plaintiff's motion for service of Defendants Redder and Baugh (Docket No. 71) is GRANTED. Within **15 days of the date this order is filed**, the Marshal **shall** file with the Clerk of Court executed summonses showing service of process upon Defendants Correctional Officer Redder and Correctional Officer Baugh at Pelican Bay State Prison; if necessary to meet this deadline, the Marshal shall serve these Defendants in person. If the Marshal cannot serve Defendants Redder and/or Baugh at Pelican Bay State Prison, in person if necessary, the Marshal shall so notify the Court by returning the summonses unexecuted to the Clerk of Court **within 15 days of the date this order is filed** with an explanation as to why service could not be effectuated.

4. Plaintiff's motion for default judgment against Defendants Jacobs and Kirkland (Docket No. 72) is DENIED. Plaintiff must either himself effect service on Defendants Jacobs and Kirkland or provide the Court with an accurate current location for these Defendants such that the Marshal is able to effect service on them. <u>If Plaintiff fails to effectuate service on Defendants Jacobs and Kirkland or provide the Court with an accurate current location for said Defendants within **thirty (30) days** of the date this order is filed, Plaintiff's claims against said Defendants will be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.</u>

5. The remaining parties are granted leave to conduct discovery in accordance with the Federal Rules of Civil Procedure. Following service of process, Plaintiff may seek discovery from any of the remaining parties as to the location and/or identity of any unserved or "Doe" defendants.

6. Because it is clear from the motion that he has not satisfied the "meet and confer" requirements of the discovery rules, see Fed. R. Civ. P. 37(a)(2)(A), Plaintiff's motion to compel discovery (Docket No. 73) is DENIED. Plaintiff may seek discovery from any of the remaining parties directly pursuant to the Federal Rules of Civil Procedure.

The Clerk shall terminate Docket Nos. 53, 55, 64, 65, 71, 72, and 73.

IT IS SO ORDERED.

DATED: 9/18/08

JEREMY FOGEL
United States District Judge